UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

------------------------------------------------------x

| | | |
|---|---|---|
| REBEKA STOWELL and CARRIE STOWELL, | : | |
| | : | CIVIL ACTION NO. |
| | : | |
| Plaintiffs, | : | |
| | : | JUDGE |
| | : | |
| vs. | : | |
| | : | MAGISTRATE JUDGE |
| HOUSTON ASTROS, LLC; HARRIS COUNTY-HOUSTON SPORTS AUTHORITY; and J. KENT FRIEDMAN, in his official capacity as Chairman of the Board of Directors of the HARRIS COUNTY-HOUSTON SPORTS AUTHORITY, | : | |
| | : | JURY TRIAL DEMANDED |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

------------------------------------------------------x

## **COMPLAINT**

Plaintiffs, REBEKA STOWELL and CARRIE STOWELL, by and through their undersigned counsel, hereby file this original Complaint and sue HOUSTON ASTROS, LLC for declaratory and injunctive relief, and attorneys' fees and costs pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §12182 *et seq*. ("Americans with Disabilities Act" or "ADA"); sue HARRIS COUNTY-HOUSTON SPORTS AUTHORITY ("HCHSA") for damages (including nominal damages), injunctive and declaratory relief, attorneys' fees and costs, pursuant to Title II of the ADA, 42 U.S.C. § 12131 *et seq*.; and sues J. KENT FRIEDMAN, in his official capacity as Chair of HCHSA, for injunctive and declaratory relief and attorneys' fees and costs, pursuant to the ADA. CARRIE STOWELL brings her claims for associational discrimination

under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(E) and Title II of the ADA, 42 U.S.C. § 12182; 28 C.F.R . § 35.130(g). Accordingly, Plaintiffs allege:

<u>**JURISDICTION AND PARTIES**</u>

1. This is an action for relief pursuant to Title III of the ADA, 42 U.S.C. § 12101 *et seq.* and Title II of the ADA, 42 U.S.C. § 12131 *et seq.*

2. This Court is vested with original jurisdiction over the Federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the property at issue in this lawsuit is located in the Harris County, in the Southern District of Texas, Houston Division.

4. Plaintiffs, Rebeka Stowell and Carrie Stowell, are residents of Houston, Texas.

5. Rebeka Stowell ("Rebeka") is a qualified individual with a disability under the ADA. Rebeka has Postural Orthostatic Tachycardia Syndrome ("POTS"). Due to her disability, Rebeka is substantially impaired in several major life activities, including walking and standing, and relies on a power wheelchair for mobility.

6. Rebeka also has Type 1 Diabetes. Under the regulations for Title III of the ADA, diabetes is a physical impairment. *See* 28 C.F.R. § 36.105(b)(2). Moreover, under the regulations for Title III of the ADA, there are certain "predictable assessments," that is, physical impairments that predictably make an individual a qualified individual with a disability. One of these predictable assessments is that "Diabetes substantially limits endocrine function[.]" *See* 28 C.F.R. § 36.105(d)(2)(iii)(H).

7. Rebeka relies on a service animal that is individually trained to perform tasks for her, within

the meaning of 28 C.F.R. §36.104. Specifically, Rebeka's service animal is a diabetic alert dog that has been individually trained to assist Rebeka by detecting her blood sugar levels and to alert Rebeka when her blood sugar is either too high or too low.

8.  Rebeka is Carrie Stowell's daughter. Carrie Stowell ("Carrie") is not disabled. However, Carrie accompanied Rebeka to Minute Maid Park on June 21, 2022.

9.  Upon information and belief, Houston Astros, LLC ("Astros") is a limited liability company doing business in Houston, Texas.

10. Upon information and belief, Astros is domiciled at 501 Crawford Street, Houston, Texas 77002.

11. Upon information and belief, the HCHSA is the political entity which owns the real property, improvements, and programs which are the subject of this action, to wit: Minute Maid Park, located at 501 Crawford Street, Houston, Texas 77002 (hereinafter "MMP" or "the Property").

12. Upon information and belief, J. Kent Friedman ("Freidman"), named in his official capacity as the Chairman of the Board of Directors of the HCHSA, is the official with chief executive power with respect to the HCHSA, and bears responsibility in his official capacity as chief executive for administering, operating, and maintaining the HCHSA's public goods and services.

13. Friedman could vote in favor of a proposal to modify MMP to comply with the ADA.

14. While Friedman is not the sole participant in the application of the challenged statute, he has definite responsibilities relating to the application of the challenged statute. While

Friedman cannot unilaterally authorize the capital expenditures to bring MMP into compliance with the ADA, he holds one of the nine votes that could vote to effectuate those changes Therefore, Friedman can favorably redress Plaintiff's injury.

15.    Upon information and belief, during Houston Astros games and their associated events, Astros operates the programs, services, and accommodations offered at MMP.

16.    Upon information and belief, Astros is responsible for violations of Title III of the ADA at the Property that deal with operations during Houston Astros baseball games.

17.    Astros is obligated to comply with the ADA.

18.    HCHSA and Mr. Friedman are responsible for any violations of Title II of the ADA at the Property and are also responsible for the actions of its contractor, Astros.  *See* 28 C.F.R. § 35.130(b)(1) ("a public entity, in providing any aid, benefit, or service, may not, directly *or through contractual, licensing, or other arrangements*, discriminate against individuals with disabilities.") (emphasis added).

19.    Mr. Friedman is sued as the Chairman of the Board of Directors of the HCHSA pursuant to the doctrine of *Ex parte Young*.

20.    All Defendants are obligated to comply with the ADA.

## FACTUAL STATEMENT

21.    Plaintiffs reallege and reaver Paragraphs 1 - 20 as if they were expressly restated herein.

22.    MMP is a place of public accommodation, subject to the ADA, generally located at 501 Crawford Street, Houston, Texas 77002.

23.    MMP is an events and exhibition venue, located in Houston, Texas.

4

24.     MMP is used for hosting sporting events and live entertainment events.

25.     MMP hosts home games for the Houston Astros baseball team.

26.     Carrie purchased tickets to the June 21, 2022 Houston Astros baseball game through her employer. Carrie planned to attend the game with her daughter Rebeka. This would be Plaintiffs' first visit to MMP.

27.     In May, well in advance of the June 21, 2022 game, Carrie contacted the Houston Astros guest services to ask about accessible seating. The tickets Carrie acquired were from Carrie's employer's group package of tickets, which did not include any accessible seats. Carrie was advised by the Houston Astros guest services that her tickets could be exchanged for accessible seats when they arrived at the game.

28.     Prior to arriving at MMP on June 21, 2022, Carrie went to the MMP website to determine the location of the designated-accessible parking at MMP. Carrie found no such information on the MMP parking map.[1]

29.     Because Plaintiffs could not locate designated-accessible parking, they were forced to find parking off-site and travel to MMP.

30.     Nonetheless, Plaintiffs arrived at the South Home Plate entrance of MMP around 5:15 p.m. and immediately inquired at the ticket window about exchanging their tickets for a wheelchair and companion seat. Rebeka's service animal was also present with Plaintiffs at the game.

_____

1 https://www.mlb.com/astros/ballpark/parking (last visited November 1, 2022).

31.   MMP staff members at the ticket window were unsure of how to direct Plaintiffs so they could exchange their tickets. After extensive discussions among the MMP staff, Plaintiffs were directed to enter MMP and go to Fan Accommodations.

32.   However, since Rebeka was accompanied by her service animal, staff at MMP required that Plaintiffs be continuously monitored by stadium security so they could "keep track" of the service animal.

33.   Plaintiffs were embarrassed and humiliated that they had to be followed around by stadium security. Plaintiffs felt like they were being penalized and treated like they had done something wrong simply because Rebeka was accompanied by her trained service animal.

34.   Plaintiffs arrived at MMP Fan Accommodations, where Carrie explained to the supervisor assisting them that they needed to exchange their tickets for a wheelchair and companion seat. The supervisor named "Precious" told Carrie to wait while she could "see what she could do." Twenty minutes later, "Precious" returned with a Houston Police Officer and informed Carrie that she had to pay an additional sixteen dollars to be moved to accessible seating. Fearing they would be unable to watch the game, Carrie paid the sixteen dollars.

35.   Carrie felt helpless and intimidated by the police presence and believed her only option was to pay the sixteen dollars so she and her daughter could have accessible seats.

36.   Plaintiffs made their way to the accessible seats, while still accompanied by stadium security (ostensibly because of the presence of Rebeka's service animal) and tried to enjoy the Houston Astros game.

37.   However, the wheelchair seating at MMP is located on the main concourse with a concession stand directly behind the seating area. There was no divider or rope separating the wheelchair seating from the general public walking along the concourse, so other people attending the game would frequently bump into the back of Rebeka's chair and further disturb Plaintiffs by yelling to their friends in the stands about concession orders.

38.   While at MMP, Plaintiffs visited the restroom. Rebeka attempted to use the designated accessible restroom stall but discovered that it was too small for her to maneuver around.

39.   Plaintiffs also discovered that the door to the family restroom was too heavy to open and further required a twisting motion, in violation of the ADA.

40.   Plaintiffs were upset by the constant surveillance of stadium staffers, their treatment by Fan Accommodations, the extra fee they had to pay to get wheelchair seating, the constant barrage of other fans yelling over and bumping into Rebeka's wheelchair, and the inaccessible bathrooms. Plaintiffs were unable to enjoy the Houston Astros baseball game and decided to leave the game early during the fourth inning.

41.   Plaintiffs were very distraught and upset over this incident.

42.   On June 29, 2022, Carrie sent an email to fans@astros.com detailing Plaintiffs' experience and seeking reimbursement of the sixteen dollar fee she had to pay to transfer her tickets to accessible seats.

43.   Carrie received a call from Michael Kenny, Senior Director of Guest Relations, in response to her email. Mr. Kenny offered for Plaintiffs to return to MMP "as our guest," but was adamant that they would have to be followed by MMP staffers due to the presence of the

service animal. Mr. Kenny claimed that this service animal surveillance policy was developed with the help of a consultant from the FBI. Mr. Kenny was dismissive of the Plaintiffs' concerns regarding their privacy and was condescending and rude.

44. Plaintiffs did not take Mr. Kenny up on his offer to be MMP's surveilled guests.

45. Plaintiffs love baseball and plan to and will visit MMP in the future as patrons but fear they will again be followed around by MMP staffers because of Rebeka's service animal, charged an additional fee to exchange for accessible tickets, and be unable to use the restroom.

## <u>COUNT I: VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT BY ASTROS AS TO REBEKA STOWELL</u>

46. Rebeka repeats and realleges all preceding paragraphs in support of her claim.

47. At all times relevant to this action, Title III of the ADA has been in full force and effect and has applied to Astros' conduct.

48. Title III of the ADA states, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." *See* 42 U.S.C. § 12132.

49. At all times relevant to this action, Rebeka was an individual with a disability within the meaning of the ADA and had substantial limitations to the major life activities of walking, standing, and endocrine function as defined by 42 U.S.C. § 12132.

<u>Astros' Service Animal Policy Violates the ADA.</u>

50.     Pursuant to 28 C.F.R. § 36.302(c)(1), "a public accommodation shall modify its policies, practices, or procedures to permit the use of a service animal by an individual with a disability."

51.     Pursuant to 28 C.F.R. § 36.302(c)(7), "Individuals with disabilities shall be permitted to be accompanied by their service animals in all areas of a place of public accommodation where members of the public, program participants, clients, customers, patrons, or invitees, as relevant, are allowed to go."

52.     The ADA outlaws practices that have a disparate impact upon persons with disabilities even in the absence of any conscious intent to discriminate. Thus, a public accommodation may not "utilize standards or criteria or methods of administration that have the *effect* of discriminating on the basis of disability, or that perpetuate the discrimination of others who are subject to common administrative control." 28 C.F.R. § 36.204 (emphasis added).

53.     Upon information and belief, Astros has a policy that requires a security guard and/or MMP staffers to accompany trained service animals around MMP. By continuously monitoring Rebeka and her service animal during her time at MMP, Astros violated the ADA.

54.     Astros' employees and/or agents discriminated against Rebeka by limiting her enjoyment of the accommodations of a place of public accommodation, i.e., surveilled access to MMP. Astros' employees and/or agents excluded, denied benefits to, and otherwise subjected Rebeka to discrimination on the basis of her status as a person with a disability with a service animal by refusing to let Rebeka attend the Houston Astros game without a security escort.

55.   Astros' employees and/or agents subjected Rebeka to discrimination by interfering with Rebeka's ability to traverse around and explore MMP because of the constant presence of security and/or MMP staffers shadowing her movements around the stadium.

56.   Astros' employees and/or agents were aware of the fact that Rebeka's dog was a service animal, as she and/or her mother had clearly communicated the service animal's role to them.

57.   There is no indication that Rebeka's service animal was out of control or not housebroken.

58.   Nonetheless, Rebeka was not permitted to freely traverse around MMP with her service animal without being followed by MMP staffers.

59.   At the June 21, 2022 Houston Astros game, Rebeka was further discriminated against by being subjected to the humiliation, fear, and anxiety of being constantly watched and followed by MMP staffers.

   <u>Astros' Policy of Charging a Transfer Fee for Accessible Seating Violates the ADA.</u>

60.   Under the ADA, a public accommodation is required to modify its policies, practices, or procedures to mitigate any disparate impact upon persons with disabilities. 28 CFR § 36.302(a).

61.   Public accommodations must also take affirmative measures to ensure that such persons have an equal opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that are available from that public accommodation. 42 U.S.C. § 12182; 28 CFR §§ 36.202(b), 36.201(a), 36.203(a), 36.302(a).

62.    The ADA's implementing regulations contain specific mandates for public accommodations regarding ticketing, accessible seating, and ticket sales. 28 CFR § 36.302(f).

63.    Upon information and belief, modification of the policies, practices, and/or procedures of Astros would provide Rebeka with an equal opportunity to participate in, or benefit from, the goods, services, and accommodations which Astros offers to the general public.

64.    By charging Rebeka and her mother a $16.00 fee to transfer her tickets to wheelchair and companion seating, Astros failed to comply with the specific requirements of 28 CFR § 36.302(f).

65.    Rebeka was further discriminated against by being subjected to the humiliation, fear, and anxiety of being charged an extra fee so that she could watch the Houston Astros game. There is simply no analogous experience to which an ambulatory patron could have been subjected; no adequate comparison can be made for ambulatory individuals.

<u>The Bathrooms at Minute Maid Park are not Accessible.</u>

66.    The Property is a place of public accommodation, subject to the ADA, generally located at: 501 Crawford Street, Houston, Texas 77002.

67.    Rebeka has visited MMP and desires to visit MMP again in the future.

68.    During her June 21, 2022 visit to MMP, Rebeka experienced serious difficulty using the restroom at MMP.

69.    Upon information and belief, Defendant is in violation of 42 U.S.C. § 12181 *et seq*. and 28 C.F.R. § 36.302 *et seq*. and is discriminating against Rebeka due to, but not limited to, the following violations which exist at MMP:

      I.    Upon information and belief, the following barriers are alleged to be the

responsibility of Defendant:

    A.    The designated accessible restroom stall is too small;

    B.    The door of the family bathroom at MMP is too heavy to open;

    C.    The door knob of the family bathroom at MMP requires a twisting motion to open; and

    D.    Other mobility-related ADA barriers to be identified following a complete inspection of MMP.

70.    Rebeka fears that if she returns to MMP to attend a Houston Astros baseball game or any other event, she would again be subjected to discrimination on the basis of her disability.

71.    Rebeka was further discriminated against by being subjected to the humiliation, fear, and anxiety of not being able to use the restroom independently.

72.    Rebeka has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Rebeka is entitled to have her reasonable attorneys' fees, costs, and expenses paid by Defendant pursuant to 42 U.S.C. § 12205.

## **COUNT II: VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT BY ASTROS AS TO CARRIE STOWELL**

73.    Carrie repeats and realleges all preceding paragraphs in support of her claim.

74.    Carrie brings her claim under Title III of the ADA for associational discrimination.

75.    Title III of the ADA prohibits associational discrimination. Pursuant to 42 USC 12182 (b)(1)(E):

> It shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.

76.   Carrie is Rebeka's mother and accompanied her to the June 21, 2022 Houston Astros baseball game. Carrie assisted Rebeka while she was at the game.

77.   Carrie has suffered a specific, direct, and separate injury from the injury suffered by Rebeka.

78.   Carrie purchased Plaintiffs' tickets via her employer.

79.   Due to Astros' discriminatory actions, Carrie was forced to pay a sixteen dollar fee so that Plaintiffs' tickets could be transferred to wheelchair and companion seating.

80.   To add insult to injury, Carrie felt threatened by the presence of a Houston Police Officer when the supervisor at Fan Accommodations insisted that she pay this additional fee.

81.   Carrie was directly discriminated against as a result of her known association with Rebeka. Carrie was unable to enjoy the Houston Astros game with her daughter due to Astros' discriminatory actions.

82.   When the Plaintiffs were forced to pay an additional fee and be constantly surveilled by stadium security and/or staffers because of Rebeka's service animal while attending the baseball game, Carrie experienced frustration, emotional distress, embarrassment, anxiety, and fear as a result of the discrimination.

83.   Carrie has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Carrie is entitled to have her reasonable attorneys' fees, costs, and expenses paid by Astros pursuant to 42 U.S.C. § 12205.

## **COUNT III: VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT AS TO HCHSA AND FREIDMAN BY REBEKA STOWELL**

84.   Rebeka adopts and re-alleges the allegations contained in paragraphs 1-83 as if fully stated herein.

85.     Rebeka continues to desire to visit the Property, but fears that she will experience serious difficulty again in light of the failures of Astros to make adequate and sufficient accommodations for Rebeka as a wheelchair and service dog user. As the owner of the Property, HCHSA and Friedman are vicariously liable for any discrimination which occurs at the Property under the ADA by Astros.

86.     HCHSA and Friedman have failed to adopt and implement adequate and sufficient policies and procedures and are therefore vicariously liable for all policies and procedures which are used by Astros at the Property that deny Rebeka meaningful access to the goods, services, and programs which are offered at the Property.

87.     Upon information and belief, HCHSA and Friedman control the physical infrastructure at the Property, including the bathroom facilities, such that they are independently liable for ADA violations at the Property.

88.     HCHSA and Friedman have discriminated against Rebeka by denying her full access to the services, programs, and/or activities by failing to make their facilities readily accessible as required by 42 U.S.C. §12132 and its implementing regulations at 28 C.F.R. § 35.101 *et. seq.*

89.     Specifically, the actions set forth in paragraphs 46-72 show that Astros is effectively excluding wheelchair patrons from obtaining the same benefits available to ambulatory patrons, in violation of 28 CFR §§ 35.130(a), 35.130(b)(1)(i), 35.130(b)(1)(ii), 35.130(b)(3)(i), and 35.130(b)(7)(i).

90.     HCHSA and Friedman have discriminated against Rebeka and others similarly situated in violation of the ADA by excluding and/or denying Rebeka the full and equal benefits of their services, programs, and/or activities by failing to, *inter alia*, make adequate and

sufficient accommodations for mobility impaired individuals and individuals who use service animals such as Rebeka, as detailed above.

91.    Upon information and belief, HCHSA and Friedman continue to discriminate against Rebeka, and all those similarly situated, by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered   goods, services, programs, activities, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to make such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services,  programs,  and/or  activities, segregated or otherwise treated differently than other individuals.

92.    Upon information and belief, Rebeka, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and/or activities of HCHSA, and have  otherwise  been  discriminated  against  and damaged by HCHSA and Friedman because of HCHSA and Friedman's discrimination, as set forth above. Rebeka and all others similarly situated will continue to suffer such discrimination, injury, and damage without the immediate relief provided by the ADA as requested herein.

93.    42 U.S.C. § 12133 provides: "[t]he remedies, procedures, and rights set forth in section 794 of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title."

94.     Rebeka has retained the undersigned counsel and is entitled to recover compensatory and nominal damages, reasonable attorneys' fees, costs, and litigation expenses from HCHSA and Friedman pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 35.175.2

95.     Rebeka is without adequate remedy at law and is suffering irreparable harm.

96.     Pursuant to 42 U.S.C. § 12131, *et seq.*, this Court is provided authority to grant Rebeka injunctive relief including an order that HCHSA and Friedman alter the facilities at Property and alter their policies at the Property to make the programs and/or activities offered there readily accessible to and useable by Rebeka and all other persons with disabilities as defined by the ADA; or by closing the Property until such time as HCHSA and Friedman cure their violations of the ADA.

## COUNT IV: VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT AS TO HCHSA AND FREIDMAN BY CARRIE STOWELL

97.     Carrie adopts and re-alleges the allegations contained in paragraphs 1-96 as if fully stated herein.

98.     Carrie brings her claim under Title II of the ADA for associational discrimination.

99.     Pursuant to the implementing regulations of Title II of the ADA, 28 C.F.R. § 130(g):

> A public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.

100.    The allegations in paragraphs 76-82 describe the specific, direct, and separate injury Carrie suffered through Astros' discriminatory actions based on her association with Rebeka.

---

2 Rebeka Stowell is <u>not</u> seeking monetary damages from Friedman.

101.    HCHSA and Friedman have failed to adopt and implement adequate and sufficient policies and procedures and are therefore vicariously liable for all policies and procedures which are used by Astros at the Property that discriminate against individuals with disabilities.

102.    Carrie continues to desire to visit the Property with her daughter, but fears that they will experience serious difficulty again in light of the failures of Astros to make adequate and sufficient accommodations for Rebeka as a wheelchair and service dog user. As the owner of the Property, HCHSA and Friedman are vicariously liable for any discrimination which occurs at the Property under the ADA by Astros.

103.    HCHSA and Friedman have discriminated against Carrie by excluding or otherwise denying her equal access to the services, programs, or activities offered at the Property because of her known association with an individual with a disability as required by 42 U.S.C. §12132 and its implementing regulations at 28 C.F.R. § 35.130(g).

104.    42 U.S.C. § 12133 provides: "[t]he remedies, procedures, and rights set forth in section 794 of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title."

105.    Rebeka has retained the undersigned counsel and is entitled to recover compensatory and nominal damages, reasonable attorneys' fees, costs, and litigation expenses from HCHSA and Friedman pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 35.175.3

---

3 Carrie Stowell is not seeking monetary damages from Friedman. With regards to the request for nominal damages, it is Plaintiffs' position that even an award of nominal damages would confer significant civil rights to the public, as a judgment in their favor against Astros, regardless of the amount, would deter Astros from discriminating against individuals with disabilities in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants, and request the following declaratory and injunctive relief, compensatory and nominal damages, and fees and costs:

A. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' actions subjected Rebeka Stowell to unlawful discrimination in violation of the ADA;

B. Enter an Order directing Defendants to alter the Property to make it accessible to and useable by individuals with mobility disabilities to the full extent required by the ADA;

C. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' actions subjected Carrie Stowell to unlawful discrimination in violation of the ADA;

D. That this Court enter an Order directing Defendants to alter their policies, practices, and/or procedures to make the Property accessible to and useable by individuals with a disability who rely on wheelchairs and/or service animals to the full extent required by the ADA;

E. Award to Plaintiffs:

   i. Compensatory and nominal damages, reasonable costs and attorneys' fees pursuant to Title II of the ADA;

   ii. Reasonable costs and attorneys' fees pursuant to Title III of the ADA;

   iii. Interest on all amounts at the highest rates and from the earliest dates allowed by law; and

   iv. Any and all other relief that this Court finds necessary and appropriate.

Date: December 14, 2022

Respectfully submitted,

/s/ G<small>ARRET</small> S. D<small>E</small>R<small>EUS</small>
**BIZER & D<small>E</small>REUS, LLC**
GARRET S. D<small>E</small>REUS (Bar No. LA35105)
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996
Email: gdereus@bizerlaw.com
*Attorney in Charge*

***AND***

Martin J. Cirkiel
Attorney State Bar No.: 00783829
Federal ID No. 21488
CIRKIEL LAW GROUP, P.C.
f/k/a Cirkiel & Associates, P.C.
1901 E. Palm Valley Blvd.
Round Rock, Texas 78664
(512) 244-6658 [Telephone]
(512) 244-6744 [Direct Line]
(512) 244-6014 [Facsimile]
marty@cirkielaw.com
www.cirkielaw.com